Good morning, and we will begin with Ms. Zeitlin. And how much time would you like to preserve, please? I have three minutes for rebuttal. Very good. Go ahead, please. Thank you for this opportunity. My name is Alexandra Zeitlin, and I represent Imad Jaffal, the appellant here. The district court's judgment should be reversed because record facts present genuine dispute of material facts. The sole issue on appeal is whether Jaffal's parents were legally separated. The appellant presented a valid divorce degree from Jordan, and it should be afforded comity. Why is comity involved? Comity is involved because it's a foreign divorce, Your Honor. But no one's challenging the legitimacy of the Jordanian decree. So it's not a situation where a U.S. court has to determine whether or not the Jordanian decree is valid or not. That's beside the point. The question is, what is the effect of the Jordanian divorce decree? A mission to file this claim for derivative citizenship. But no matter how we answer that question, the Jordanian divorce decree will stand. So it's not really a comity, is it? Well, if it's not really a comity, Your Honor, then if divorce is recognized, then the issue is settled. Well, I'm not saying divorce would be recognized. The decree is valid. The issue is whether or not under U.S. laws the nature of the Jordanian proceedings is such that it fits within the statute to give him derivative citizenship. I could be wrong, but I don't think Mr. Sonpat will challenge the validity of the divorce decree. I'm reading his argument as simply arguing that, yeah, the Jordanian divorce decree is valid, but under the statute it doesn't give him what he needs under the three criteria to establish derivative citizenship. I'm not saying I agree with the argument or that it's right, but it seems to me that comity is a rabbit hole. We can easily go down here, and I'm not sure we need to chase after that. So, Your Honor, then if the decree is valid and it definitely gives the opponent here the right to derivative citizenship, now the question I think the government is disputing is whether Mr. Jafal's mother had notice in the proceedings and whether she participated in those proceedings. And the availability of notice is stated on the face of the document. The court stated that it would serve her with such notice. And then whether she received the actual notice is not really a question. The question is whether she received reasonable notice and whether she had a reasonable opportunity to participate. And these are all very fact-laden issues. So the Jordanian divorce does not contravene the public policy. And the Jordanian court has jurisdiction to issue such judgment because the parties were present within the jurisdiction. The parties were citizens of that country. The parties were married in Jordan, and the parties lived together as a husband and wife in that jurisdiction. So the manner of moral would apply in this case because this is a case where the parties have not remarried. And if there is no law that defines, so like with the, sorry, there is no particular state law applies. The BIA has adopted certain criteria in determining whether a foreign country's divorce degree should be recognized for immigration purposes. The Fourth Circuit has cited these criteria with approval in Jihad and also in Anan and Najj. And if the parents did not remarry, the board will apply it to protests to determine the divorce's validity. Let me ask you a question about the government's position, right? The government seeks to undermine, I think, the validity of the divorce decree by invoking Heron's rationale that unless a divorce is bilateral, it should not have effect. Now, I know you spoke a few moments ago to notice. What are the other reasons why Heron should not undermine the validity of the divorce decree here? So the notice is, yes, one of the issues. And then whether, generally speaking, it's whether the divorce is valid in the place where it occurs and also whether it must be worthy of recognition. Which usually turns on the factors that I just mentioned. So the court considered, in the matter of Ma, the court considered all these factors and rejected the divorce because one of the parties were not living as husband and wife. In the jurisdiction and that undermined the, this was one of the required factors under Ma. Could you address the legal separation and the custodial elements of 1432? Sure. So the legal separation is accomplished either by presentation of a valid divorce decree or the valid, under SPCHAN, the valid divorce decree is not a requirement necessarily where the jurisdiction does not, the jurisdiction as was in Jordan does not require that the decree of, that there is a government that premature. So the separation can be achieved through the revocable divorce as it is. But what about the facts? What about the specific facts of your client's situation? Do they support or they undermine the legal separation and the separation of legal custody? Well, the legal separation is supported by the facts because the, Ms. Jafal, she left her home and she went to Jordan to be domiciled in Jordan. And she was informed by her husband that he wants to divorce her. So she had knowledge that he divorced her actually. And he reiterated that several times. He divorced her in Jordan and then he divorced her early again in Ohio. So. But didn't they live together after this for quite a while? Well, they lived together for a little bit of time after she returned to Ohio, but then he reminded her that he divorced her. So, and that happened before the, before he naturalized. So that the final separation took place before the parties finally separated. And it's clear that they separated. They never lived together again. And she, she lived in the home of her mother and sister. In terms of the legal custody, Your Honor, the legal custody, there is a legal custody degree, which should also be recognized. But it is also apparent from the facts that Mr. Jafal and his siblings were living with his father. They were living with the father when his mother lived somewhere else. And if she did come in to make some meals on occasion, she did so when the father was not around. And also, there is, it's clear that after Mr. Jafal naturalized in 1982, the parties no longer, there is no clear indication that the parties had separated. There's clear indication that the parties separated in 1981. And that they lived separate and apart even when the family moved to a new residence. And that also, what is also clear is that she never went to live with her husband when he moved. What do you make of the fact that she identified herself as a widow on her naturalization papers in 1984? Well, Your Honor, she did so because she clearly knew that, you know, she had a document to show that she's a widow. She knew that her husband divorced her. She didn't have the papers back then to show that. So the choice is whether she identifies herself as a widow or a divorcee. And her status as a widow is clear. She has a document to prove that she's clear. It's not that she didn't think she was divorced. It's that she had the document to prove it. And that was the reason she identified herself clearly as a widow. So it was obviously the husband's intent was to divorce her. She never went to live with the family again. And a few occasions when she had visited the children, it was just to put her husband was not around. With respect to the legal custody, the children always lived with their father. And he was the custodian parent. He was the one who had custody of that. He lived with them at the first address and also lived with them when he moved to the other address. And all this happened right before he naturalized. So it's not relevant what happened after he naturalized. And whether the wife continued to visit him and help him. When he got sick in 1982, what's relevant is what happened right before he naturalized. And it was clear there was a separation. And the custody was both physical custody and the legal custody. And if that's not determined, then there are factual issues that exist. And the court never addressed those issues in the district court level. So it should be remanded for that determination. All right. Thank you very much. Judge McKee, did you have anything further, sir? No. All right. Thank you so much. We'll hear from counsel for appellees. Truman Tampin on behalf of the appellees. Can everyone hear me? Yes. All right. Thank you, Your Honor. Good morning, and may it please the Court. Mr. DeFault argues that he derived citizenship from his late father upon his naturalization in 1982. In order for him to prevail, he has to establish two things. One, that his parents were legally separated at the time of his naturalization. And number two, that his father had legal custody of him at the same time. And he fails on both accounts. And that's the reason that this court — Let me ask you this question. Under Morgan and Espichan, don't we have to look to Jordanian law to determine the validity of the divorce decree? Well, Your Honor, not necessarily. What we would say is that what Jordanian law requires and allows for wasn't really briefed by either party on summary judgment or really briefed here. But the Court need not get there. I think that the Court — That's the question. That's the issue, isn't it? I'm sorry, Your Honor. Isn't that the issue? I mean, whether or not this divorce was valid under Jordanian law, that's what the statute makes us look to. That controls our inquiry, doesn't it? It can, Your Honor. But the thing is — but the government's position is that we're not addressing the validity of the divorce. We believe that the principles of comedy do apply here and that this case can be resolved on the issues of comedy and by not recognizing the divorce decree and extending comedy. How is that comedy if we refuse to recognize a foreign decree? Isn't that the very opposite of comedy if you want to go down that comedy road? Yeah, I'm totally — And not necessarily, Your Honor. The Court has the authority to recognize a decree without questioning the validity of the divorce itself. So it can — What's the purpose of the recognition? What's the purpose of the recognition then? I don't understand. Yeah. The purpose of the — I'm not sure I follow, Your Honor, the purpose of the recognition. You were trying to draw a distinction between recognition on the one hand and validity on the other, and I didn't get your point. So, Your Honor, for that, there's — when we're addressing the validity of the divorce, that goes to full faith and credit. And I believe there was a Supreme Court that said that that may not necessarily — that may not be within the Court's authority to question the validity of the divorce. But comedy is a different — Where did the full faith and credit clauses come in here? We're talking about a foreign judgment. How does the full faith and credit come into play? It would be to recognize the divorce and the validity of the divorce, Your Honor. So, again, the government's position is to the extent — Mr. DeFault offers this decree as evidence of that there was a legal separation. A court has the authority or has the ability to either recognize or to extend — sorry, to extend comedy to this divorce decree as evidence that there was a legal separation or to not do so. And that was the case in Paris. Are you challenging the validity of this divorce? Are you challenging — are you arguing that they were not legally separated because they continued to live together? And are you also challenging that there was no legal custody? Is that your argument? We're challenging the latter, Your Honor. We're not challenging the validity of the divorce not here. We're saying that there's no evidence of legal separation or legal custody. It's a Judean decree of custody. Isn't the decree the evidence that the father had his custody at the time of the divorce? Well, and to recognize the custodial decree, Your Honor, we would still extend the same argument to comedy. But I think if we go to what Judge Restrepo was referring to during my colleague's time about the facts, the facts also undermine both that there was a legal separation and that there was legal custody. Then it's not summary judgment. If there's a factual dispute, then it's not summary judgment. We send her back. We're saying there's a factual dispute. You're saying that he didn't have custody. She's saying he did have custody. That sounds like a factual dispute to me. Mr. Allen? Well, respectfully, Your Honor, if the question is whether there was legal custody, then that's a question of law, and the facts aren't in dispute there. How do we resolve that question of law? There are undisputed facts of how the custodial arrangements during the time of naturalization. Before the divorce, both parents were responsible for taking care of their children. Are you talking about both parents shared under Sharia law? Because my understanding of Sharia law is that the mother, Jafal's mother, had custody of the children to a particular age, and then under law, custody then was transferred to the father. If you're not challenging the validity of either the custodial decree or the divorce decree, then I don't know what the basis for the challenge would be now. Because if we're accepting that they're divorced, that means there's a legal separation. And if we're accepting that the custodial decree is valid, right, because you said you're not challenging the custodial decree, the custodial decree says that Mr. Jafal's father had custody. Those are the two questions at hand. And comedy doesn't come into this because there's no question of whether the foreign judgment may be enforced, right, because none of the parties to any of these decrees or judgments is challenging it, right, because that's generally you would agree how comedy comes into play. So very confused with regard to your position as it relates to the divorce decree, as it relates to custody, as it relates to comedy. So take them one by one and help us. Okay, Your Honor. So we do think that the comedy issues come into play. But just accepting the first question, even if the decrees are accepted, there are still evidence. Are you accepting? I think you said you are accepting them. So you're not challenging the validity of the divorce, correct? Your Honor, we're not challenging the validity of the divorce, but the government stands by its position that it should not be afforded comedy. So understanding that the court has questions about that argument, we can put that off to the side. You're not challenging the validity of the custodial decree, correct? No. Again, we would ask that the court not extend comedy to that as well. But, again, understanding that the court may have concerns, then there could be – I'm sorry? Could you tell me what is your fundamental understanding of the notion of comedy? The fundamental notion of comedy is whether or not a court can recognize a foreign judgment for the purposes of enforcement or for any other purpose. Well, what other purpose would there be? What other purpose rather than enforcement? And doesn't the notion of comedy turn on who seeks enforcement and against whom? It may, Your Honor. You're explaining your understanding of comedy that the government doesn't want to extend comedy to this when there's no challenge to the underlying agreement, and there's no party to the agreement that doesn't seek enforcement of the decree, judgment, or whatever you want to describe it as. So where is this notion of extending comedy as you're discussing it here? For that, I think the Fourth Circuit's decision in Jihad actually is instructive, where there was a divorce of whether or not a divorce would be recognized, a divorce decree would be recognized from Pakistan, at which point the court applied principles of comedy to determine whether or not to recognize it. In Jihad, wasn't one of the parties to the decree involved? I mean, involved in the determination of whether or not it was valid? I'm sorry. Are you asking if one of the parties?  It was the plaintiff, the child, Your Honor, I believe. And it was then that the court analyzed, domiciled and analyzed certain facts to not extend comedy and to deny derivative citizenship. But in this case, neither of the Jafals are challenging the divorce decree or the custodial agreement, correct? No. They are offering as proof that there was a legal separation. So there's no dispute. So what you're making is really a public policy argument, isn't it? Yes, Your Honor, and that's the second principle. It is a public policy argument, which is that recognition of these decrees would be kind of detrimental to public policy because how in the world? My head is absolutely spinning. I mean, just round and round and round. It may look like a stationary. It's spinning. I've been bothered in the very beginning because I can't quite figure out what the government's interest is. I know that's not necessarily our inquiry, but at the heart of it, I'm wondering, what is the government's interest? If Mr. Jafal is correct, then the government is trying to deport a United States citizen. And I'm wondering, why would the government want to deport a United States citizen? This may be stuff from the background that we're not aware of, but this is not a situation where we're talking about moral character under the statutes that precludes relief from withholding of removal or any of that stuff that's not here. The issue is whether or not the guy is a U.S. citizen. He's introduced evidence of a decree from Jordan that he was divorced, that his dad was divorced at the time he was 17 years old. No one's challenging that. He's introduced a thing called Legal Authentication and Court Proof of Legitimacy Soil Custody written by Judge Ali Faleh Alamuri that states that Jafal was born in 1965, was living with his father, Naim Jafal, who gained legal custody as of September 15, 1881, while the guy is still a minor. So all of the documents here, one, there's a divorce. She's not challenging it. I thought the government was challenging it, and now I'm not even sure the government's challenging it. He has documentary evidence from the court in Jordan that his father had custody of him following the divorce while he was still 17 years old. No one's apparently challenging that. So I'm arguing why in the hell are we here? Well, Your Honor, if I may just correct one point, which is that the government is not trying – in this action, the government is not trying to deport or remove Mr. Jafal. This is a 1503 claim, so it's a claim of naturalization. Any issues regarding to removal would be brought up through the petition for review process. Yeah, but I'll rephrase the question then. Why is the government's interest in preventing the guy's citizenship from being recognized? I don't get that.  For the purposes of summary judgment, the government may not address or may not take issue with the validity. But if this court were to remand the action back, those would be issues of fact, as the court recognized. There could be disputes of fact that could be raised at trial there. May I just say again, because we would only remand it back if the Irish was a fact. You're saying, well, there's no issue of fact now, but if we send it back, there may be issues of fact. But if there's no issues of fact now, we wouldn't remand it. I'm beginning to understand how Alice felt when she ran to the caterpillar smoking the pipe in the tree. I mean, I'm there with her. Well, Your Honor, I think it's important to note that Mr. Default did not move for summary judgment procedurally. Just suppose there were no cross motions for summary judgment in this case. So should the court decide to reverse, then it should remand it back. Let me go back to my original question. So you're not challenging the validity of the divorce decree or the custodial document, correct? For the purposes of this argument right now, Your Honor, we are not. All right. So what's the public policy argument? So the public policy argument, Your Honor, is that naturalization is one of the most prestigious privileges in the world. We don't think it would be an issue to recognize these decrees if when there are certain questions that Mr. Default's mother was not afforded some of the most basic due process protections. Due process under where? Under whose law? She's not challenging it. She's not complaining. She said, yeah, he told me that he was going to divorce me. She had, I believe, even noticed she didn't show up. After that, she found out he repeated three times, I divorce you, I divorce you, I divorce you. She's not raising any of that. You're arguing she didn't have due process. But due process is not a magical concept. We look to the relevant law to try to determine now what process was due. It's a concept that law students have a lot of trouble with. It's not something which just comes down like a mantra, this is due process. We look to Jordanian law to determine what process was due. She had it. It's not even relevant. Well, Your Honor, respectfully, I would disagree there, Your Honor, but I would just want to correct one point, which is that You're saying the 14th Amendment should be used to determine whether or not a decree obtained in Jordan under Jordanian law, Sharia law at the time, is valid. We should extrapolate 14th Amendment principles of notice under Jordan and say, Jordan, we're not going to recognize any decree that's valid under Jordanian law because it doesn't cut much into the 14th Amendment. Your Honor, let me just clarify. The government's position is not that no divorce decree from Jordan or custodial decree from Jordan should be recognized. That is not the government's position here. It is just that on the facts, with the facts in this summary judgment record, it should not be. And the principles of due process... Why? Why shouldn't it be? Because, again, it goes to the fundamental notions of due process. What fundamental notions of due process? Where are you getting this from? The United States has certain notions of due process arising in the 15th and 14th Amendment. I would assume that Germany has certain fundamental notions of due process, maybe rooted in fairness or some German documents. What is this fundamental concept of due process that you're talking about? Under Jordanian law, this is perfectly valid. Well, Your Honor, the Supreme Court has talked about notice and notice in an opportunity... Under the 15th Amendment, yes. Right, and I will... Who are you asserting this notion of due process? Upon whose behalf are you speaking? Because you clearly can't be speaking on Mr. Jaffal's mother's behalf, right? Unfortunately, his father has passed away. So upon whose benefit or to whose benefit are you speaking about this notion of due process? It can't be heard, right? It can't be heard because under both of the documents that we've been continuously referring to, they are valid, as you've said. So upon whose benefit are you seeking this due process notion? This goes to Judge Restrepo's earlier question about public policy and whether or not recognition of the divorce and legal custody would violate public policy. Isn't the statute the public policy? I'm sorry? Isn't the statute here the public policy that we have to worry about? Right, and the statute... Yes, Your Honor. It's the other thing. Congress intended the statute to protect the custodial rights of non-U.S. citizens, parents, from children from naturalizing automatically as an operation of law when those parents had not themselves naturalized. I'm a really simple guy. If the divorce decree is valid and the custodial decree is valid, isn't a hard stop right there? Does he satisfy the naturalization criteria? I join Brother Restrepo in his simpleness. I hesitate to say I'm simple, too, so I won't. I'll say I join. Why isn't a hard stop right there? Well, Your Honor, because, again, I think it's important for me to note that the government's arguing that it doesn't address it is not taking issue with the validity of the divorce decree and the custodial decree for the purposes of this argument. There could be issues. The district court's decision was focused on comedy and whether comedy should be extended to the divorce decree. And there could be issues of fact that go to the authenticity of the divorce decree and the custodial decree that may be relevant or may be subject to cross-examination and questioning during trial. So you're saying it's a summary judgment. You're saying that the district court shouldn't have granted summary judgment because there may be issues of fact here. If the court is inclined not to extend it to address the comedy issue and believes that comedy is not – should not – the comedy holding from the district court is improper, then, yes, there would be issues of fact that would make summary judgment improper here. But you moved for summary judgment. It was granted. Yes, Your Honor. And the argument was whether or not comedy should be afforded to those divorce decrees. And the district court agreed with the government there. Well, let me ask you a question. If there were genuine disputes of material fact, what would be the basis for the grant of summary judgment? Because if you think their extent now, they should have been back then, which means you shouldn't have moved. Are you telling us you improvidently moved for summary judgment? No, Your Honor. The government believed that the comedy principles come into play when recognizing a foreign divorce and custodial decree and believed that it was a question of law that could be decided with the undisputed fact. Have you come across any case anywhere, particularly with regard to the Third Circuit, where the court has applied comedy at the request of a non-party to the foreign judgment? Because all of the cases that you're alluding to are cases in which the party is a they're not dealing with a non-party to the foreign judgment. They're dealing with a party to the foreign judgment. And that's why comedy was appropriate in those instances. Here we're talking about a non-party because it's not Mrs. Jafal. It's not Mr. Jafal. That's why we're confused here. So do you have any cases? Can't hear you. I'm sorry, Your Honor. I'm just thinking. I believe it was an issue. It's not hard. You can say no. I'm just trying to go through my Rolodex, Your Honor. I'm sorry. Take your time if you're going to go through your Rolodex, then. I don't believe so. I don't believe so, Your Honor. What about anywhere? Anywhere and anywhere. Not just the Third Circuit. Anywhere. I could and I believe in Jahed the plaintiff was not a party to the original divorce, Your Honor. So when discussions of Donasau, I could be wrong about that, but I believe that may have been the case in Jahed. Well, let's talk about Jahad or Jahed, however you pronounce it. Who was involved in that case? An individual had filed a petition for review arguing derivative citizenship, and in that case I believe the court went on to say that the parents hadn't domiciled in Pakistan and therefore the divorce decree should not be recognized. Your Honor, may I have a moment to just pull it up, Your Honor? Absolutely. Give me the site. Oh, it's 468 F. 3rd, 230, and probably we want to look at the discussion 234 on. Yes. So, Your Honor, the question in Jahed was, again, it was a question of whether Mr. Jahed's parents had legally separated at the time of naturalization. And if we look at pages 235 to 236, they talk about Mr. Jahed's parents being married in Afghanistan but being divorced in Pakistan. And where's the discussion of comedy? Well, Your Honor, we're talking about that was an issue of domicile, whether or not it should be recognized on the principles of domicile that the parents had not domiciled in Pakistan. So how does that help us on the issue of comedy? If I misspoke before, I apologize, Your Honor. Jahed was not based on comedy, but it was an issue of domicile, which don't necessarily exist here. Let me go back to summary judgment. So if you go back to the district court and you've already conceded that the divorce decree is valid and you conceded that the custodial decree is valid, what's the factual dispute? Well, Your Honor, the government would want to raise other arguments. But you conceded this. You conceded that, correct? You've told us as much several times. Well, I think it would be for the purposes of this argument, Your Honor, for summary judgment again. But there could be other arguments. This is important. Help me so that we're clear, and I'll ask that we get a transcript of this. I don't know why I want to relive this experience. But a transcript may somehow be helpful. But you do concede that the divorce decree is valid. You do concede that. For the purposes of this argument, Your Honor. Yeah, I'm not talking for the fate of the universe here. I'm talking about through this appeal. And you conceded that the custody decree is valid and that his dad had custody of him while he was 17 after the valid divorce. You conceded that. Well, we would – no, Your Honor. If it's just based on the divorce decree – or, sorry, the custodial decree, that would be one thing. But I think there are – then there could be facts that undermine that. So you're saying he had – the father may have had legal – no, you're saying the father did have legal custody of him. Maybe there's some things that undermine that. But you're conceding there was a divorce and the father had legal custody of him while he was a minor. Is that what you're conceding? If we're conceding that the validity of the two decrees, then yes. Well, yeah, if you're conceding validity – that's like saying – wait, forget the if phrase. You are conceding that. Okay. Can we get a transcript? Because I do want to relive this moment. It's a rare moment. I'm not – you're too young to remember this. But if you get a chance, Google Professor Irwin Corey. Because I'm reminded here today of Professor Irwin Corey. And I don't want to be disparaging, but I'm having trouble following the argument. I'll look that up, Your Honor. All right. Thanks so much. Thank you, Your Honor. Do you have anything else, Judge McKee? No. I do not. I especially declined the invitation, Judge Kingbright. Wonderful. Thank you. I appreciate that. Let's move then to rebuttal, please. If you have any. Or if you want to rest on the brief. I rest on the brief. Wonderful. Thank you. All right. So, counsel, thank you very much for the vigorous argument. We'll take the matter under advisement. Have a good day. Thank you, Your Honor. Thank you.